SYLVESTER A. BRADLEY, Administratrix, *vs.* ADAM BOND et al. SAME *vs.* FRANK H. JACOBS.

*Creditor's Bill—Marshalling of Assets—Practice.*

When a creditor holds as security for the same debt a mortgage from B and a judgment against A, whose obligation the debt really is as between A and B, then in the distribution of A's estate under a creditor's bill, the subsequent creditors are not entitled to compel the prior creditor holding such judgment to first seek payment of his debt from the mortgage, but he is entitled to the priority secured by his judgment.

A party who is interested in the mode of the distribution of a fund in a Court of equity has the right to apply for leave to intervene in the cause and assert his claim. When such petition was filed but no order was passed on it, the Court may afterwards pass an order *nunc pro tunc* authorizing the party to intervene, such order to have the same effect as if it had been made when the petition was filed.

Appeal from the Circuit Court for Harford County where the following opinion was delivered by

Van Bibber, J. This is a creditor's suit for the proper distribution of the property· and estate of James S. Calder amongst his creditor's according to their legal priorities.

It appears from the proceedings that the record liens are more in amount than the proceeds of sale and that there will be nothing for the general creditors.

From the papers it appears that after costs and trustees expenses the liens of record have priority as follows :

1st. Alexander S. Bell, mortgage, 21st April, 1887, $1,000.

2nd. Otho S. Lee, mortgage, 21st April, 1897, $800.

3rd. Frank H. Jacobs, judgment, 15th October, 1897, $500.

4th. Bradley's admr., judgment, 18th May, 1900, $705.24.

5th. Jas. C. Calder, mortgage, 14th September, 1903, $1,200.

6th. Second National·Bank, judgment, 15 September, 1903, $304.75.

7th. Harford National Bank, judgment, 17th September, 1903, $293.01.

Bradley's admr., in her answer to the bill of complaint, admits that the mortgage to Bell and Lee are liens prior to her judgment and that the judgment for $500 held by F. H. Jacobs is also prior in date to her judgment, but alleges that it was given as collateral security for a mortgage which Jacobs holds against a certain .Adam Bond for $500 and that he should be required to exhaust all of the mortgaged property and only claim the deficiency against Calder's estate.

The deed of trust was made by Calder to Carver October 9th, 1903, and upon it a bill was filed the same day asking that the trust be executed under the orders and directions of this Court. The parties to the bill, besides Calder and wife and Carver, trustee, are the holders of the seven above enumerated liens. The decree was passed on the 24th day of November, 1903.

The question now before the Court is raised by a petition filed by one Adam Bond on December 30th, 1903, in which he claims that the judgment for $500 held by Frank H. Jacobs should be paid in full before anything is paid upon the liens subsequent to its date, which is in direct conflict with the claim set up by Bradley's administratrix in her answer.

From the proceedings and testimony it appears that in 1892 and for sometime prior thereto James S. Calder was indebted unto Adam Bond upon open accounts for a sum of money exceeding $650 in amount, that in October of 1892 Bond bargained with S. A. Williams, trustee, for the purchase of a house and lot for $650 cash and then made demand upon Calder for the payment of that amount. In reponse to this demand, Calder raised $150 in cash and undertook to arrange the purchase with Williams and took Bond to Williams' office for that purpose. The purchase was completed by a deed being given to Bond and by his giving Williams a balance of purchase-money mortgage for $500 upon which was endorsed Calder's guarantce for its payment. Thereafter up to the time of his assignment, Calder always paid the interest. The mortgage was assigned by Williams to a certain Schuster, who in 1897 became dissatisfied with the security and at his instance Calder, as further security, confessed a judgment in the Circuit Court for Harford County for $500. The mortgage and judgment shortly afterwards were both assigned to Frank H. Jacobs, who held them at the time of Calder's assignment. Bond in his petition denics all knowledge of the mortgage and said he supposed Mr. Williams and Calder had arranged for the payment of the $500 independent of him, but the testimony and papers do not bear out his contention.

In this case the familiar principle, that where there is a lien on two different parcels of land and a junior lien on one of them and the party holding the elder liens elects to have his whole debt paid out of the land bound by the lien of the junior creditor, the latter may have the prior creditor thrown upon the other fund, or have the prior lien assigned to him and receive all the aid it can afford him, does not apply be-

cause the fund or property answerable for the $500 debt are not all the property of the same debtor, the house and lot described in the mortgage belonged to Adam Bond and the property covered by the judgment lien belonged to Calder. *Hall* v. *Farmers' National Bank*, 53 Md. 124; *Exparte Kimble*, 17 Vesey, 520.

The facts disclose a clear case of principal and surety, the mortgagor Bond is the principal debtor and Calder his surety, first by his personal guarantee endorsed on the mortgage and subsequently by his giving a lien on his farm. In *Johns* v. *Reardon*, 11 Md. 470, it was decided that where there are two mortgagors of distinct estates, one being surety for the other for the payment of the same debt and a subsequent mortgagee has a lien only on the estate of the principal in the first debt, it was the equity of the surety to have her principal's estate applied, first to the payment of that debt for which her's stood as security before the subsequent mortgagee could come upon the fund. If there had been no deed of assignment and there was an absence of dealings and agreements between Calder and Bond and Jacobs undertook to collect the $500 due him from Calder, the latter upon proof that he was simply the surety for the original indebtedness, would clearly under the rulings of the Court of Appeals in *Johns* v. *Reardon*, have the right to compel Jacobs to exhaust the property of Bond covered by the mortgage and only come upon his property for any deficiency, if any. But under the facts disclosed by the testimony in this case, Calder would have been estopped from enforcing what would otherwise have been his equity against Bond and would have been required to pay the full amount of Jacobs' claim.

The next inquiry is to ascertain, whether after the deed of assignment from Calder, the lien holders on his property subsequent in date to that held by Jacobs, acquired any other or additional rights as against Bond and Jacobs than Caldwell himself would have had. In *Barron* v. *Whitesides*, 89 Md. 458, it was decided "that an assignee for the benefit of creditors, succeeds only to the rights of his assignor and takes the

property subject to all existing liens and equities. The assignee is the mere representative of the debtor, enjoying his rights only, and bound where he should be bound" and it is recognized generally that in cases where an assignment for benefit of creditors has been made, the creditors, as between themselves have no better or different rights to the funds in the assignees hands, than they had against the original debtor before the assignment.

Taking this view of the question, it follows, that the equity of Adam Bond in this case compels a distribution of the funds after the payment of the costs, expenses and commissions and the two mortgages of Bell and Lee, to the Frank H. Jacobs' judgment and the surplus, if any, to the remaining creditors according to their priorities.

A question was raised as to the right of Bond to intervene in the proceedings. An examination of his petition and the proceedings discloses the fact that he was not a party to the original proceedings and that except for the facts disclosed *dehors* the record he was not a necessary part.

An examination of the decisions of this State throwing light upon the proper practice in equity in this particular, shows, that a party interested in a fund under the control and jurisdiction of the Court of equity, at any time, before distribution and while it is still under the control of the Court, has a right to come in by petition and establish his right, but only by leave of the Court and with such restrictions as to the method of procedure as the Court may in its proper discretion impose. The customary method is for a party to present to the Court his petition containing a full and complete disclosure and statement of his contention and upon it the Court determines whether the case so presented is one of equitable merit and upon it passes an order; if the prayer is granted then the order will provide for such notice to the parties interested as will be proper and timely and the subsequent proceedings under the petition will then proceed in the usual course under our equity practice. On the petition in this case no application was made to the Court for an order and none

was passed. In all other respects the proceedings appear to be regular, notice was given to all the parties by subpoena properly issued and served, testimony was regularly taken before the Examiner and returned, and all the parties who desired had an opportunity to present their contention to the Court. If application had been made to the Court for an order it would have been passed with only such restrictions as would have provided for practically the same notice that was actually given. It is therefore my opinion, the parties not appearing to have suffered, that the defect can be properly supplied by a formal order passed *nunc pro tunc*. I will sign orders in the case in accordance with the aforegoing opinion.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas H. Robinson,* for the appellant.

*William H. Harlan* and *Richard Dallam,* for the appellees.

JONES, J., delivered the opinion of the Court.

This seems to us a very plain case and there is no need to elaborate it. The facts of the case and the respective contentions of the parties are stated in the opinion filed in the case by the learned Judge below. There are two questions in the case. First is whether the appellee Bond was a proper party to the proceedings below. Of this there would seem to be no room for doubt. The proceedings were instituted on behalf of all the creditors of James S. Calder. Bond was shown beyond question to have been a creditor. As a creditor too he was shown to have an interest in maintaining the priority of the judgment of Frank H. Jacobs. It was but a matter of course to make him a party to the proceedings and there could be no prejudice to anybody therefore in the *nunc pro tunc* order of the Court below passed on the 14th of September, 1904. The other question is as to the priority of the judgment of Frank H. Jacobs over those of the junior judgment creditors who are seeking to defeat this priority. There

can be no doubt of the legal priority of this judgment over those of the judgment creditors who are thus seeking to postpone it to their own.    This legal priority can only be defeated by the junior encumbrancers showing some equity which the Court ought to and can allow to have that effect.    No such equity has been shown.    On the contrary there is a strong equity against the position of these junior lienors that the judgment of Jacobs ought to be postponed to theirs.    To uphold the contention of the junior lienors that Jacobs ought to be compelled to resort to the mortgage upon the property of the appellee, Bond, would be grossly inequitable.    The debt represented by the mortgage is really Calder's debt which he ought to have paid and promised to pay; and simultaneously with the execution of the mortgage Calder endorsed upon it his guarantee to pay it.    When therefore he confessed the judgment which Frank H. Jacobs now holds for the same debt, he did so for a meritorious consideration.    The judgment was really for his own debt.    He so testifies; and that, and other testimony, establishes this beyond question.    When the judgment held by Jacobs is paid the mortgage debt will be extinguished or relieved to the extent that the proceeds of the judgment will pay that debt and interest.    It is not perceived what equity parties standing merely in the position of junior lienors, can have against the judgment sought here to be postponed to theirs, under the circumstances which the case develops.    For a better understanding of the case as appearing from the facts in the Court below the opinion of that Court will be included in the report of the case.    The decree below will be affirmed.

> *Decree affirmed with costs to the appellees.*

(Decided June 22nd, 1905.)